UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MICRON TECHNOLOGY, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FACTORY MUTUAL INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 18-cv-07689-LB<br><br>**ORDER (1) GRANTING FOREIGN UNDERWRITERS' MOTION TO DISMISS AND (2) DENYING FALVEY CARGO UNDERWRITING'S MOTION TO DISMISS**<br><br>Re: ECF No. 46 |

## INTRODUCTION

Plaintiff Micron Technology, Inc., a Delaware corporation based in Boise, Idaho, is a global manufacturer of semiconductor microelectronic devices, including computer-memory chips. This breach-of-contract action, brought by Micron Technology and four of its Taiwanese and Singaporean subsidiaries (collectively, "Micron"), relates to three insurance policies that Micron bought.

Micron retained a San Francisco-based broker, Integro Insurance Brokers, to buy insurance. Micron, through Integro, bought two insurance policies (the "Factory Mutual Policies") from Factory Mutual Insurance Company, a Rhode Island corporation based in Rhode Island, and one insurance policy (the "Falvey Policy") from Falvey Cargo Underwriting, another Rhode Island

corporation based in Rhode Island. The Falvey Policy was additionally underwritten by seventeen foreign underwriters (collectively, "Underwriters") that are based overseas.[1]

In 2017 and 2018, two of Micron's facilities suffered accidents that damaged Micron's computer chips and equipment and caused Micron to suffer productivity losses. Micron timely notified Factory Mutual, Falvey, and the Underwriters of both accidents and submitted insurance claims. Factory Mutual made a partial advance payment but refused to pay the full value of Micron's losses. Falvey and the Underwriters disclaimed coverage entirely as to both accidents and refused to make any payment. Following unsuccessful settlement negotiations, Micron filed this suit, bringing claims against Factory Mutual, Falvey, and the Underwriters for breach of contract and breach of the implied covenant of good faith and fair dealing and claims for declaratory relief about the parties' rights and obligations under the Policies.

Factory Mutual answered Micron's complaint and did not move to dismiss.[2] Falvey and the Underwriters moved to dismiss under the so-called "first-to-file" rule, arguing that four months before Micron filed this lawsuit, the Underwriters (but not Falvey) filed a declaratory-judgment action in the Southern District of New York against Micron relating to the Falvey Policy and these accidents and that the New York action should take precedence.[3] The Underwriters (but not Falvey) also moved to dismiss for lack of personal jurisdiction.[4]

---

[1] The Underwriters are (1) Navigators Underwriting Agency Ltd., (2) Chubb Underwriting Agencies, Ltd., (3) Aegis London Holdings Ltd., (4) Argenta Syndicate Management Ltd., (5) Canopius Managing Agents Ltd., (6) MS Amlin Plc., (7) Liberty Corporate Capital Ltd., (8) Beazley Group Ltd., (9) Cathedral Underwriting Ltd. (UK), (10) Axis Managing Agency Ltd., (11) Chaucer Syndicates Ltd., (12) Antares Underwriting Ltd., (13) Hiscox Insurance Company Ltd., (14) Chine RE UK Ltd. — all British underwriters with their primary places of business in London — and (15) Argo Managing Agency 1200, a Scottish underwriter with its principal place of business in Scotland, (16) Allied World Assurance Company Holdings, GMBH, a Swiss underwriter with its principal place of business in Zug, Switzerland, and (17) Ironshore Inc., a Caymanian underwriter with its principal place of business in Bermuda. Compl. – ECF No. 1 at 4–9 (¶¶ 13–31). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Factory Mut. Answer – ECF No. 55.

[3] Falvey and Underwriters Mot. to Dismiss – ECF No. 46.

[4] *Id.*

The court held a hearing and now rules as follows. The court grants the Underwriters' motion to dismiss for lack of personal jurisdiction. Micron has not established that the Underwriters purposefully availed themselves of the privilege of conducting activities in California and thus has not established that they are subject to personal jurisdiction here. (Among other things, Micron is not a California entity, and the Underwriters' insuring Micron did not impose on them any ongoing obligations in California.) The court denies Falvey's motion to dismiss under the first-to-file rule. The Southern District of New York issued an order holding that the Underwriters' action there was improperly anticipatory and dismissed that case (a case where Falvey was never a party to begin with). In light of that ruling and dismissal, the court declines to apply the first-to-file rule to dismiss Falvey from this case.

## STATEMENT

Because only Falvey and the Underwriters moved to dismiss (and Factory Mutual did not), the facts in this section are those relevant to Falvey, the Underwriters, and the Falvey Policy (as opposed to Factory Mutual or the Factory Mutual Policy).

### 1. The Falvey Policy

In 2008, Micron began using the services of Integro Insurance Brokers, located in San Francisco, California, for placement and purchase of its global property-insurance program.[5] Integro brokered the placement of purchase for Micron's insurance policies from Falvey annually from 2009 until 2018.[6] The insurance policies were formally issued and sold by Falvey, although Micron understood that Falvey worked for and on behalf of various persons and entities, mostly based in London, that were the actual underwriters on Falvey insurance policies.[7]

---

[5] Ronan Decl. – ECF No. 49-1 at 3 (¶ 5). On a motion to dismiss for lack of personal jurisdiction, the parties may submit, and the court may consider, declarations and other evidence outside the pleadings. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

[6] *Id.* at 3–4 (¶¶ 5–6); Korn Decl. – ECF No. 49-2 at 2 (¶ 4); Sullivan Decl. – ECF No. 49-3 at 2 (¶ 4).

[7] Ronan Decl. – ECF No. 49-1 at 4 (¶ 6)

From 2007 to 2014, the primary Falvey employee responsible for Micron's insurance coverage was Al Dugan, who lived and worked in San Francisco.[8] After Mr. Dugan retired at the end of 2014, Micron's and Integro's primary contacts at Falvey became founder and CEO Mike Falvey, Sr., Senior Vice President Michael E. Falvey (who previously worked in San Francisco while Mr. Dugan was employed by Falvey), and claims manager Robert Falvey.[9] Mike, Michael, and Robert, Falvey reside in Rhode Island.[10] Micron and Integro continued to "interface" with the Falveys from Integro's office in San Francisco.[11] Micron and Integro had in-person meetings with the Falveys in San Francisco to discuss Micron's policies and claims.[12]

Micron alleges that the negotiations between Micron, on the one hand, and Falvey and the Underwriters, on the other, regarding the scope, placement, and terms of the Falvey Policy took place in California.[13] In response, SVP Michael Falvey submitted a declaration attesting that (1) Micron (through Integro) approached him for insurance beginning in June 2017 in Rhode Island, (2) Micron submitted information related to its request for insurance to him in Rhode Island, (3) he reviewed and assessed Micron's information in Rhode Island, (4) he negotiated the insurance-coverage terms with Micron from Rhode Island, (5) he communicated with Micron from Rhode Island, (6) he provided a quote for the insurance from Rhode Island, (7) Micron sent a request to bind coverage to him in Rhode Island, and (8) the ultimate Falvey Policy was compiled and issued in Rhode Island.[14] Micron also submitted several declarations: its declarants do not dispute that while Micron, through Integro, might have negotiated the Falvey Policy on its side

---

[8] *Id.* (¶ 7); Korn Decl. – ECF No. 49-2 at 3 (¶ 7); Sullivan Decl. – ECF No. 49-3 at 3 (¶ 7).

[9] Ronan Decl. – ECF No. 49-1 at 4 (¶ 8); Korn Decl. – ECF No. 49-2 at 3 (¶ 8); Sullivan Decl. – ECF No. 49-3 at 3 (¶ 8).

[10] Ronan Decl. – ECF No. 49-1 at 4 (¶ 8); Korn Decl. – ECF No. 49-2 at 4 (¶ 8); Sullivan Decl. – ECF No. 49-3 at 3 (¶ 8).

[11] Ronan Decl. – ECF No. 49-1 at 4 (¶ 8); Korn Decl. – ECF No. 49-2 at 4 (¶ 8); Sullivan Decl. – ECF No. 49-3 at 3 (¶ 8).

[12] Ronan Decl. – ECF No. 49-1 at 4 (¶ 8); Korn Decl. – ECF No. 49-2 at 4 (¶ 8); Sullivan Decl. – ECF No. 49-3 at 3 (¶ 8).

[13] Compl. – ECF No. 1 at 14 (¶ 55).

[14] Michael E. Falvey Decl. – ECF No. 46-2 at 2–3 (¶¶ 6–14).

from San Francisco, Falvey negotiated on its side from Rhode Island.[15] Micron does not claim that any of the Underwriters ever communicated or interacted directly with either Micron or Integro.[16]

The Falvey Policy at issue in this lawsuit is the policy that was effective from June 15, 2017 to June 15, 2018 (policy number MC-2388/WC-2388).[17] The Policy provided for a maximum of $95 million in coverage.[18] The Policy states that:

> The interests insured under this policy are (i) lawful goods and/or merchandise and/or property of every description whether new or used, including bulk goods, consisting principally of, but not limited to, **computer components, supplies, equipment or similar interests, including raw materials, work in process and/or various stages of manufacture, including salesperson's samples** and including prepaid freight, advanced freight, guaranteed freight and freight payable "vessel lost or not lost," under or on deck, shipped by or consigned to The Insured, its agents or others, (ii) The Insured's own goods and/or merchandise and/or property, and (iii) goods and/or merchandise and/or property of others in which The Insured may have an interest.[19]

The Falvey Policy states that it was "[i]ssued at North Kingstown, Rhode Island, as per authority granted Falvey Cargo Underwriting July 12, 2017."[20]

## 2. The Accidents

Certain steps in the manufacture of Micron's computer-memory semiconductor wafers require a stream of ultra-pure nitrogen, where even a miniscule presence of other components can cause

---

[15] *See* Korn Decl. – ECF No. 49-2 at 3 (¶ 8) ("Although I understand that Messrs. Falvey reside in Rhode Island, I continued to interface with them on all matters relating to Micron primarily if not exclusively from Integro's office in San Francisco."); Sullivan Decl. – ECF No. 49-3 at 3 (¶ 8) (same).

[16] *See* Compl. – ECF No. 1 at 14 (¶ 55) (grouping Falvey and Underwriters together and discussing "negotiations" generally but not alleging who specifically was involved in those negotiations or where those parties were); Ronan Decl. – ECF No. 49-1 (discussing meetings and communications with Falvey but not discussing meetings or communications with the Underwriters); Korn Decl. – ECF No. 49-2 (same); Sullivan Decl. – ECF No. 49-3 (same).

[17] Compl. – ECF No. 1 at 14 (¶ 53).

[18] *Id.*

[19] Compl. Ex. C (Falvey Policy) – ECF No. 1-3 at 30 (¶ 3.1) (emphasis in original); *see also* Compl. – ECF No. 1 at 14–15 (¶ 56).

[20] Compl. Ex. C (Falvey Policy) – ECF No. 1-3 at 4.

damage to the wafers and production tools.[21] Micron facilities maintain dedicated "air separation plants" that take ambient air (which is naturally composed of approximately 78 percent nitrogen, 21 percent oxygen, and 1 percent other trace gases) and distill out its component elements to generate pure nitrogen.[22]

In July 2017, one of the air-separation plants at one of Micron's semiconductor facilities, known as "Fab 11," suffered physical injury and damage, leading to "massive amounts" of extraneous oxygen entering the distribution piping and production system.[23] The oxygen reached the wafer-production area and came into direct contact with production tools and in-progress wafers, damaging them.[24] Production tools, nitrogen-distribution piping, and damaged nitrogen purifiers had to be repaired or replaced.[25] Many in-progress wafers, unfinished goods, and raw materials were damaged.[26] Micron's ability to produce wafers was diminished for a number of weeks while repairs were made, which reduced its production pace and caused additional losses, including time-element losses.[27]

In March 2018, the air-separation plant at another one of Micron's semiconductor facilities, known as "Fab 16," suffered damage that prevented the plant from restarting after undergoing maintenance.[28] The plant remained offline for over a week.[29] As a result, Micron had to curtail its operations at Fab 16 due to the loss of its nitrogen supply.[30] Micron suffered production losses,

---

[21] Compl. – ECF No. 1 at 16 (¶ 63).
[22] *Id.* at 16 (¶ 64), 17 (¶ 68).
[23] *Id.* at 17 (¶ 69).
[24] *Id.* at 18 (¶ 72).
[25] *Id.* (¶ 73).
[26] *Id.*
[27] *Id.*
[28] *Id.* at 19 (¶ 76).
[29] *Id.* (¶ 77).
[30] *Id.*

and wafers in various stages of manufacture were idled in between manufacturing stages, resulting in a number of wafers being lost, damaged, or compromised.[31]

Micron asserts that its losses from the Fab 11 and Fab 16 accidents are covered by the Falvey Policy.[32] Micron alleges that it timely notified Falvey and the Underwriters of both accidents, "duly tendered both events" for coverage and payment, and provided Falvey and the Underwriters with additional information and documentation supporting its insurance claims.[33] Falvey and the Underwriters denied coverage and refused to make any payments.[34]

### 3. The Southern District of New York Action

On February 22, 2018, Micron sent a letter to Falvey that it would bring suit against Falvey and/or the Underwriters in Idaho on May 14, 2018 if its claim was not satisfactorily resolved before that time.[35] On May 10, 2018, Micron sent a letter stating that Falvey had suggested mediation and that Micron agreed to mediate on June 13, 2018 and that it therefore would extend the date when it would bring suit in Idaho to July 16, 2018.[36] On June 20, 2018, Micron sent a letter stating that in light of further potential settlement discussions, Micron would extend the date when it would bring suit in Idaho to September 10, 2018.[37]

While settlement discussions were ongoing, on August 24, 2018, the Underwriters filed a lawsuit against Micron in the Southern District of New York: *Navigators Underwriting Agency et al. v. Micron Technology, Inc. et al.*, No. 18 Civ. 7736 (NRB) (S.D.N.Y. filed Aug. 24, 2018), seeking a declaratory judgment that they had no obligation to indemnify Micron for its losses from

---

[31] *Id.* (¶ 78).

[32] *Id.* at 20 (¶ 86).

[33] *Id.* at 21 (¶ 87).

[34] *Id.* (¶¶ 88–89).

[35] Micron Counsel Letter – ECF No. 49-6 at 3 (cited by Compl. – ECF No. 1 at 21 (¶ 91)).

[36] Micron Counsel Letter – ECF No. 49-7 at 2 (cited by Compl. – ECF No. 1 at 21 (¶ 91)).

[37] Micron Counsel Letter – ECF No. 49-8 at 2 (cited by Compl. – ECF No. 1 at 21 (¶ 91)).

the Fab 11 accident.[38] The Underwriters did not serve Micron with their complaint for several months while negotiations continued.[39] On November 28, 2018, the Underwriters filed an amended complaint, asserting that they had no obligation to indemnify Micron for its losses from the Fab 16 accident either.[40] On December 21, 2018, Micron filed this lawsuit against Falvey and the Underwriters (and Factory Mutual) in the Northern District of California.

On April 11, 2019, the Southern District of New York dismissed the Underwriters' lawsuit, holding that the "Underwriters' action is plainly anticipatory and subject to dismissal." *Navigators Underwriting Agency Ltd. v. Micron Tech., Inc.*, No. 18 Civ. 7736 (NRB), 2019 WL 1569664, at *2 (S.D.N.Y. Apr. 11, 2019) (internal quotation marks and brackets omitted). The court there held that "[s]uch a finding is particularly appropriate in this case, where Underwriters waited three months before actually serving Micron with their complaint, indicating that Underwriters filed their suit specifically to lock in a win in a 'race to the courthouse' that Micron did not even have cause to believe it was in." *Id.* The Southern District of New York also rejected the argument that the terms of the Falvey Policy required the parties to litigate in New York. *Id.* at *2 n.1. The Underwriters filed an appeal to the Second Circuit, which remains pending. *Aegis Managing Agency Ltd. v. Micron Tech. Inc.*, No. 19-1118 (2d Cir. filed Apr. 23, 2019).

## STANDARD OF REVIEW

"'In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)). The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

---

[38] Compl. – ECF No. 1 at 21–22 (¶ 92).

[39] *Id.* at 22 (¶ 92).

[40] *Id.* (¶ 93).

ORDER – No. 18-cv-07689-LB         8

"'Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Ranza*, 793 F.3d at 1068 (some internal quotation marks omitted) (quoting *CollegeSource*, 653 F.3d at 1073). "[U]ncontroverted allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). But courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit[.]" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)); *accord Ranza*, 793 F.3d at 1068 ("A plaintiff may not simply rest on the 'bare allegations of the complaint.'") (internal brackets omitted) (quoting *Schwarzenegger*, 374 F.3d at 800).

## ANALYSIS

### 1. Personal Jurisdiction

The Underwriters (but not Falvey) move to dismiss for lack of personal jurisdiction.

#### 1.1 Governing Law

In diversity cases such as this one, "'[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.'" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,' [a court's] inquiry centers on whether exercising jurisdiction comports with due process." *Id.* (quoting *Daimler*, 571 U.S. at 125; Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.")). "Due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (some internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). Micron argues only that the Underwriters are subject to specific jurisdiction.[41] "In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Id.* at 1780 (emphasis in original, internal quotation marks omitted). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal quotation marks omitted). "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted).

The Ninth Circuit employs a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211. "The plaintiff has the burden of proving the first two prongs." *Id.* at 1211–12 (citing *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011)). "If [it] does so, the burden shifts to the defendant to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable.'" *Id.* at 1212 (some internal quotation marks omitted) (quoting *CollegeSource*, 653 F.3d at 1076).

---

[41] Micron does not argue that the Underwriters are subject to general jurisdiction. *See* Pls. Opp'n – ECF No. 49 at 23–24.

With respect to the first prong, courts generally apply a "purposeful availment" analysis (as opposed to a "purposeful direction" analysis) in suits sounding in contract. *Schwarzenegger*, 374 F.3d at 802. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id*. "'A contract alone does not automatically establish minimum contacts in the plaintiff's home forum.'" *Picot*, 780 F.3d at 1212 (internal brackets omitted) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008)). "A contract is only an intermediate step that connects prior negotiations with future consequences, the real object of a business transaction." *Long v. Authentic Athletix, LLC*, No. 16-cv-03129-JSC, 2016 WL 6024591, at *3 (N.D. Cal. Oct. 14, 2016).

In the insurance context, several courts have declined to find that a non-California party to an insurance contract "purposefully availed" itself of the privilege of conducting business in California simply by negotiating an insurance contract with a counterparty located in California where the contract did not contemplate performance in California. For example, in *Applied Underwriters, Inc. v. Combined Management, Inc.*, 371 F. App'x 834 (9th Cir. 2010), an insurance company whose "home office" was in San Francisco sued the party it was insuring, a company based in Maine. *Id.* at 835. The insurer plaintiff argued that the insured defendant had reached out to the insurer in California and negotiated the insurance contract via telephone and mail with the insurer's California employees and thus was subject to personal jurisdiction in California. *Id.* The Ninth Circuit found that the insured defendant was not subject to personal jurisdiction, holding that "'ordinarily use of the mails, telephone, or other international communication simply do not qualify as purposeful activity invoking the benefits and protection of the forum state'" and that "there is no evidence in the record that the [insurance] contract contemplated performance in California." *Id.* (some internal quotation marks omitted) (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991)).

Similarly, in *Navigators Specialty Insurance Co. v. Kapiolani Residential, LLC*, No. 17-cv-06575-SI, 2018 WL 1426608 (N.D. Cal. Mar. 22, 2018), a New York insurance company with offices in California sued the parties it was insuring, real-estate developers in Hawaii, in the

Northern District of California. *Id.* at *1–2. The insured defendants bought their policy through a Hawaiian insurance broker that worked with a San Francisco broker that in turn forwarded the defendants' application to the insurer plaintiff. *Id.* at *2. The insurer plaintiff argued that it underwrote the insurance policy in San Francisco and that the negotiations of the policy were conducted through San Francisco (although the insurer negotiated only with the insurance broker, not directly with the insured defendants themselves). *Id.* at *3. The insurer plaintiff also noted that its policy called for the insured defendants to submit insurance claims to the insurer's San Francisco office. *Id.* The court found that the insured defendants were not subject to personal jurisdiction, holding that:

> defendants' only connection to California is based on the [their] purchase of a single insurance policy from [plaintiff's] San Francisco office, defendants' enrollment in that policy, and the submission of claims under that policy to [plaintiff's] San Francisco office. This is insufficient to demonstrate a "substantial connection to California." *Boschetto*, 539 F.3d at 1017. "The formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Id.* . . . The policy, which covers nonresident insureds . . . did not create any ongoing obligations on the part of the defendants in California."

*Id.* at *6 (internal brackets omitted). The court also rejected the insurer plaintiff's attempts to establish personal jurisdiction through the insurance broker's actions in California, noting that "[plaintiff] has not submitted any evidence regarding the nature of the relationship between [broker] and any of the defendants" and that "[plaintiff] has not cited any authority for the proposition that specific jurisdiction over defendants may be established based on [broker]'s actions as a wholesale broker." *Id.* at *7 (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014); *Roth*, 942 F.2d at 621–22).

**1.2 Application**

This case is further removed from California than *Applied Underwriters* and *Navigators v. Kapiolani* were. In those cases, at least one party to the insurance contracts (the insurer) was based at least in part in California and negotiated the insurance contracts at issue in California. Here, no party is based in California: Micron is based in Idaho, Falvey is based in Rhode Island, and the Underwriters are based overseas. Additionally, the Falvey Policy expressly states that it was

issued in Rhode Island, and Micron does not identify anything in the Policy that contemplates performance in California.

The only California connection that Micron alleges is that it used a California insurance broker to negotiate the Falvey Policy and that its broker conducted its side of the negotiations from California. Micron does not establish that Falvey conducted its side of the negotiations from California beyond "use of the mails, telephone, or other . . . communication[.]" *Cf. Applied Underwriters*, 371 F. App'x at 835. And Micron does not contend that the Underwriters — which are one step further removed than Falvey — conducted any negotiations or had any communications or interactions with Micron or its broker, or with anyone in California. Even assuming that Falvey purposefully availed itself of the privilege of conducting activities in California through its communications with Micron's California broker, Micron has not established that the Underwriters have purposefully availed themselves of California. *Cf. Navigators v. Kapiolani*, 2018 WL 1426608, at *7 (declining to find personal jurisdiction over defendant based on the actions of broker, but not defendant, in communicating with plaintiff in California).

Micron argues that Falvey was the Underwriters' agent and that personal jurisdiction over the Underwriters as principal can be established through Falvey's actions as agent.[42] This argument fails. To make out a prima facie case for agency, at a minimum, "the [principal] must have the right to substantially control its [agent]'s activities." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1024–25 (9th Cir. 2017) (citing *Unocal*, 248 F.3d at 926; *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013)). Micron "does not allege nor otherwise show that [the Underwriters] have the right to control [Falvey]'s activities in any manner at all." *Cf. id.* "Consequently, . . . [Micron] fail[s] to establish specific jurisdiction over [the Underwriters]" on an agency theory. *Cf. id.*

---

[42] Pls. Opp'n – ECF No. 49 at 27.

ORDER – No. 18-cv-07689-LB 13

Micron additionally argues that *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392 (9th Cir. 1986), supports its contention that the Underwriters are subject to personal jurisdiction.[43] That case dealt with a California hospital's attempts to self-insure its California doctors through a fund set up in the Cayman Islands through an "elaborate structure, . . . deliberately intended to avoid California insurance regulations, while at the same time, providing physicians at the Hospital with malpractice insurance." *Id.* at 1395. The fund was sued by a patient for a malpractice claim. *Id.* The court rejected the fund's claim that it was not subject to personal jurisdiction, noting that "the Fund's existence was 'for the benefit of California residents; to wit, California doctors'" and that the fund expressly stated that it indemnified "*California* physicians against liability solely under *California* malpractice law." *Id.* at 1398 (emphasis in original). *Haisten* is inapplicable to the facts here, where non-California underwriters undertook to indemnify a non-California company based in Idaho under an insurance policy that does not contemplate performance in California.[44]

Micron has not established that the Underwriters purposefully availed themselves of the privilege of conducting activities in California. The court therefore grants the Underwriters' motion to dismiss for lack of personal jurisdiction.

## 2. The First-to-File Rule

Falvey moves to dismiss the case under the first-to-file rule, arguing that the Underwriters' action in the Southern District of New York against Micron was filed before this action was and thus should take precedence.[45]

"[T]he well-established 'first to file rule,' . . . allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court[.]" *Alltrade, Inc.*

---

[43] Pls. Opp'n – ECF No. 49 at 25.

[44] Micron's other cases, which involved defendants directly advertising or selling products to consumers in the forum state, are equally inapplicable given that it is not a consumer in the forum state. *Cf.* Pls. Opp'n – ECF No. 49 at 25.

[45] The Underwriters also move to dismiss the case under the first-to-file rule, but their request is moot in light of their dismissal for lack of personal jurisdiction.

*v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). Here, however, the Southern District of New York held that the Underwriters' action was improperly anticipatory and dismissed that case (a case where Falvey was never a party). *Navigators v. Micron*, 2019 WL 1569664, at *2. In light of that ruling and dismissal, the court declines to apply the first-to-file rule to dismiss Falvey from this case. *Cf. ASUSTeK Computer Inc. v. AFTG-TG LLC*, No. 5:CV 11-000192-EJD, 2011 WL 6845791, at *14 (N.D. Cal. Dec. 29, 2011) (declining to apply the first-to-file rule where the court in the earlier-filed action issued a final, appealable order dismissing that action); *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1293–94 (N.D. Cal. 2013) (declining to apply the first-to-file rule where the earlier-filed action was voluntarily dismissed and "no longer pending and . . . moot for the purposes of the first-to-file rule").

## CONCLUSION

The court grants the Underwriters' motion to dismiss for lack of personal jurisdiction and denies Falvey's motion to dismiss under the first-to-file rule.

**IT IS SO ORDERED.**

Dated: June 7, 2019

_____
LAUREL BEELER
United States Magistrate Judge